1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT
9                       SOUTHERN DISTRICT OF CALIFORNIA
10

11  MARIA FLORES, by and through her        Case No.:  3:15-cv-00836-GPC-DHB
    guardian, Josie Clark,
12                                           **ORDER:**
                                Plaintiff,
13                                           **GRANTING MOTION FOR**
    v.                                       **PARTIAL SUMMARY JUDGMENT**
14
    THE UNITED STATES OF AMERICA
15  ET AL,                                   **[ECF No. 17]**

16                               Defendants.
17
18

19        Before the Court is a case arising from the alleged failure of staff at the federally-

20  funded San Ysidro Health Center (SYHC) to properly administer medication to Maria

21  Flores, an elderly patient.  Plaintiff Maria Flores, by and through her guardian Josie

22  Clark, has brought claims against Defendant United States of America (the "United

23  States" or the "Government") under the Federal Tort Claims Act (FTCA), 28 U.S.C.

24  § 2671 *et seq.*, for 1) negligence; 2) intentional infliction of emotional distress (IIED);

25  and 3) violations of California's Elder Abuse and Dependent Adult Civil Protection Act

26  (the "Elder Abuse Act" or "the Act"), Cal. Welf. & Inst. Code §§ 15600-15675.

27  Defendant filed a motion for partial summary judgment on July 19, 2016 as to Plaintiff's

28  second and third claims.  ECF No. 17.  The motion has been fully briefed.  Plaintiff filed

an opposition on August 26, 2016, ECF No. 19, and the United States filed a reply on September 9, 2016, ECF No. 20.

## BACKGROUND

The following is a summary of the undisputed facts. Maria Flores was 80 years old when she enrolled at the San Ysidro Health Center (SYHC). Pl.'s Resp. to Def.'s Undisputed Material Facts ("Pl.'s Resp. DUMF") ¶ 3, ECF No. 19-4 at 3. SYHC is an adult daycare center for patients who require assistance with basic activities of daily living. *Id.* at 2. Margarita Espinoza Depo. at 62:4 – 63:25, ECF No. 17-2 at 50-51.[1] Flores' two daughters, Leticia Reynoso and Josie Clark, chose to enroll her at SYHC because it had Spanish-speaking staff and because nurses were available to administer medication. Pl.'s Resp. DUMF ¶ 1, ECF No. 19-4 at 2.

While enrolled at SYHC, Plaintiff had a prescription for the Exelon patch, a medicinal intradermal patch that is applied once per day. *Id.* ¶ 5, ECF No. 19-4 at 3. Placing more than one intradermal patch on a patient at any given time may lead to overdose. Shirley Roman Depo. at 11:12-19, ECF No. 17-2 at 37. Accordingly, proper practice is to remove the old patch before applying another one, and to alternate where the patch is positioned. *Id.* at 11:20 – 12:6, ECF No. 17-2 at 37-38. Plaintiff's daughters noted that the Exelon patch helped their mother to be more focused and calm. *Id.*

From the time Flores enrolled at SYHC, she suffered from advanced dementia. Claudia Gonzalez Depo. at 37:16-22, ECF No. 17-2 at 28. SYHC staff members described Flores as a challenging patient. *See id.* at 39:4-10, ECF No. 17-2 at 39. She constantly looked for her deceased husband, wanted to leave the center every single day, and needed to be redirected. *Id.* Flores was a self-transfer patient, meaning she could transition from sitting to standing or from one chair to another without help from staff. Alejandro Florez Depo. at 93:11-16, ECF No. 17-2 at 24.

---

[1] Page numbers for depositions follow the numbers designated within the document. The page number in parentheses is the pagination within CM/ECF.

1    On January 7, 2014, Shirley Roman, a licensed vocational nurse ("LVN"), placed
2    an Exelon patch on Plaintiff.  Roman Depo. at 12:19-23 & 21:9-17, ECF No. 17-2 at 38
3    & 39.  Roman had approached Plaintiff from the back to deliver the medication because
4    Plaintiff had been swinging her arms at the nurse.  *Id.* at 21:9-17, ECF No. 17-2 at 39.
5    Soon after receiving the medication, Flores began to vomit and eventually became
6    unresponsive.  *Id.* at 31:1-10, ECF No. 17-2 at 43; Gonzalez Depo. at 55:8, ECF No.17-2
7    at 30.  At some point, Flores ended up on the floor.  Yolanda Clark Depo. at 46:25 – 47:1,
8    ECF No. 17-2 at 55-56.

9    Thereafter, at or around 1:00 pm, SYHC notified Flores' daughters of an issue with
10   their mother.  Exhibit 6, SYHC Incident Report, ECF No. 19-6 at 38.  Paramedics
11   received a call at 1:20 pm, and they arrived at 1:23 pm.  Exhibit 7, Comprehensive
12   Dispatch Report, ECF No. 19-6 at 40.  Flores' daughters were present while the
13   paramedics were on scene.  Gonzalez Depo. at 115:11-16, ECF No. 17-2 at 33.  Yolanda
14   Clark, Flores' granddaughter, was also present.  Clark Depo. 46:19 – 47:3, ECF No. 17-2
15   at 55-56.  A dispute over whether or not Flores was a "do not resuscitate" patient ensued
16   after Plaintiff's daughters arrived.  Gonzalez Depo. at 115:11-16, ECF No. 17-2 at 33.
17   Eventually, Flores was taken to Sharp Chula Vista Hospital for treatment.  *See* Exhibit
18   10, Sharp Chula Vista Medical Center Form, ECF No. 19-6 at 51.

19   Upon arriving at the hospital, a nurse gave Flores intravenous fluids and removed
20   the endotracheal tube that the paramedics had inserted, as Plaintiff's daughters did not
21   want their mother to be further resuscitated.  Exhibit 9, Sharp Chula Vista Document,
22   ECF No. 19-6 at 49.  Despite being taken off assisted breathing, Flores' mental state
23   improved and she became more responsive.  *See id.*  Sometime thereafter, staff at the
24   hospital noticed that Flores had an extra Exelon patch adhered to her body.  *Id.*  A staff
25   member proceeded to remove the two patches.  *Id.*  The hospital discharged Flores two
26   days later, on January 9, 2014.  Exhibit 10, Sharp Chula Vista Medical Center Form, ECF
27   No. 19-6 at 51.  At the time of discharge, hospital staff told Reynoso that her mother had
28   congestive heart failure.  Leticia Reynoso Depo. at 160:7-18, ECF No. 17-2 at 15.

After the January 7, 2014 incident, Flores did not return to SYHC. *Id.* at 168:10-12, ECF No. 17-2 at 16. According to Flores' daughter Reynoso, Plaintiff was no longer the same person after the incident. *Id.* at 168:16-17, ECF No. 17-2 at 16. Flores could no longer walk or talk after the episode, and she could no longer perform tasks independently, as she could before the incident. *Id.*; Josie Clark Depo. at 35:2-7, ECF No. 19-6 at 6. Plaintiff now argues that SYHC was responsible for the second Exelon patch found on Flores' body and that the second dosage caused the "pulmonary edema and nausea and vomiting" that brought Flores to the hospital. ECF No. 19 at 11. This suit followed.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure ("Rule") 56 empowers courts to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 327 (1986). Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material when it affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element of his or her claim on which that party will bear the burden of proof at trial. *Id.* at 322-23. If the moving party fails to bear the initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

Once the moving party has satisfied this burden, the nonmoving party cannot rest

on the mere allegations or denials of his pleading, but must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. If the non-moving party fails to make a sufficient showing of an element of its case, the moving party is entitled to judgment as a matter of law. *Id.* at 325. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). In making this determination, the court must "view[ ] the evidence in the light most favorable to the nonmoving party." *Fontana v. Haskin*, 262 F.3d 871, 876 (9th Cir. 2001). The court does not engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts; these functions are for the trier of fact. *Anderson*, 477 U.S. at 255.

## DISCUSSION

### 1. Elder Abuse Act Violation

The Elder Abuse Act was meant to protect elders by providing enhanced remedies to encourage private, civil enforcement of laws combatting elder abuse and neglect. *See Delaney v. Baker*, 971 P.2d 986, 992 (Cal. 1999); *see also Zimmer v. Nawabi*, 566 F. Supp. 2d 1025, 1033 (E.D. Cal. 2008) (citing *Intrieri v. Superior Court*, 12 Cal. Rptr. 3d 97, 105 (Cal. Ct. App. 2004)). To state a claim under the Elder Abuse Act, a plaintiff must prove by clear and convincing evidence: 1) that the defendant is liable for physical abuse or neglect and 2) that the defendant acted with recklessness, oppression, fraud, or malice in the commission of that abuse or neglect. Cal. Welf. & Inst. Code § 15657; *see also Carter v. Prime Healthcare Paradise Valley LLC*, 129 Cal. Rptr. 3d 895, 901 (Cal. Ct. App. 2011). The "enhanced remedies" available under the Act include the award of reasonable attorney's fees and costs and, in a wrongful death action, damages for pain and suffering. Cal. Welf. & Inst. Code § 15657; *see also Intrieri*, 12 Cal. Rptr. 3d at 106.

Plaintiff asserts two theories of liability under the Elder Abuse Act: namely, that SYHC "physically abused" Flores within the meaning of the Act and that SYHC "neglected" Flores within the meaning of the Act.  *See* ECF No. 19 at 22.  The Act defines physical abuse as assault, battery, unreasonable physical constraint, use of a physical or chemical restraint or psychotropic medication under certain conditions, among other definitions.  Cal. Welf. & Inst. Code § 15610.63.  The Act defines neglect as "[t]he negligent failure of any person having the care or custody of an elder or a dependent adult to exercise that degree of care that a reasonable person in a like position would exercise."[2]  *Id.* § 15610.57(a)(1).  Section 15610.57 goes on to state that neglect includes, but is not limited to, the failure to assist in personal hygiene; provide food, clothing, shelter; provide medical care for physical and mental health needs; protect from health and safety hazards; and prevent malnutrition or dehydration.  Cal. Welf. & Inst. Code § 15610.57(b).

### A. Physical Abuse

The Government argues that Plaintiff's "physical abuse" theory of liability is deficient on jurisdictional grounds and on the merits.  It argues that this Court does not have jurisdiction to hear Plaintiff's physical abuse claim because 1) any claim for physical abuse is barred under the intentional tort exception of the FTCA, 28 U.S.C. § 2860(h), and because 2) Plaintiff did not exhaust its physical abuse theory of relief in its administrative claim.  *See* ECF No. 17-1 at 14-15.  The Government further argues that Plaintiff's physical abuse claim must fail, irrespective of jurisdiction, because the fact that Flores was "sitting in a wheelchair with a seat belt on" ("the wheelchair

/ / / /

---

[2] The Elder Abuse Act also defines neglect as the "negligent failure of an elder or dependent adult to exercise that degree of self-care that a reasonable person in a like position would exercise."  Cal. Welf. & Inst. Code  § 15610.57(a)(2).  This definition, however, takes hold in the context of self-care and not medical care, as is the case here.  *See Winn v. Pioneer Medical Group, Inc.*, 370 P.3d 1011, 1016 (Cal. 2016).

1 incident") is insufficient as a matter of law to constitute physical abuse within the

2 meaning of the Elder Abuse Act.

3      The Court need not discuss the merits of Plaintiff's "physical abuse" theory of

4 liability nor whether it is barred by the intentional tort exception of the FTCA, because

5 the Court agrees with the Government that 28 U.S.C. § 2675(a), the FTCA's exhaustion

6 requirement, bars Plaintiff's claim.

7      **i.      Failure to Exhaust Administrative Remedies**

8      The exhaustion provision of the FTCA states that:

9
> "any action shall not be instituted upon a claim against the United States for
> money damages for injury or loss of property or personal injury or death
> caused by the negligent or wrongful act or omission of any employee of the
> Government . . . , unless the claimant shall have first presented the *claim* to
> the appropriate Federal agency and his claim shall have been finally denied
> by the agency in writing . . . . The failure of an agency to make a final
> disposition of a claim within six months after it is filed shall . . . be deemed a
> final denial of the claim for purposes of this section.

10

11

12

13

14

15 28 U.S.C. § 2675(a) (emphasis added).  The Government argues that Plaintiff's "physical

16 abuse" theory must fail because it did not mention the wheelchair incident in its

17 administrative tort claim.  ECF No. 17-1 at 15 (citing Exhibit G, ECF No. 17-2).  Stated

18 differently, the United States is arguing that Plaintiff did not adequately present its

19 "claim" to the administrative agency because it never raised the "physical abuse" theory

20 of liability in its administrative complaint.  ECF No. 17-1 at 16-17.  As such, the

21 Government avers that it was not provided with the requisite "minimal notice" required

22 under the FTCA.  *Id.* at 17; *see also* ECF No. 20 at 9 ("In response, Plaintiff now argues

23 that she did provide notice of a claim for Elder Abuse.  While this may be correct, it

24 missed the point of the Government's argument.  Nowhere in her administrative claim

25 did Plaintiff inform the Government that she was pursuing a liability claim premised

26 upon her being placed under physical restraint at the facility.").

27      As an initial matter, § 2675(a) does not require a claimant to raise all theories of

28 liability in the administrative complaint.  *See Shipek v. U.S.*, 752 F.2d 1352, 1355-56 (9th

Cir. 1985) (citing *Rooney v. United States*, 634 F.2d 1238 (9th Cir. 1980) for the proposition that a claimant need not state his legal theory for recovery in the administrative complaint).  A claimant is, however, required to "give[ ] notice of the manner and general circumstances of *injury* and the harm suffered, and a sum certain representing damages."  *See Avery v. U.S.*, 680 F.2d 608, 611 (9th Cir. 1982) (emphasis added); *see also* 28 U.S.C. § 2675(a).  A proper administrative claim will provide an agency with the "minimal notice" required for it to begin to investigate a claim.  *See Avery*, 680 F.2d at 610-11.

Here, Plaintiff has not provided the United States with the minimal notice required under the FTCA because Plaintiff's "physical abuse" theory of liability arose out of a separate injury.  The wheelchair incident came to light during the deposition of Reynoso, Flores' daughter.  In her testimony, Reynoso stated that she saw her mother sitting in a wheelchair with some type of restraint over her on the morning of January 7, 2014.  Reynoso Depo. at 138:25 – 139:8, ECF No. 19-6 at 56.  Reynoso stated that the restraint was the same one they used on the bus that brought her mother to work, and that it was the type of restraint that Flores could not release on her own.  *Id.* at 137:15 – 138:24.  Plaintiff, in turn, takes up this incident as evidence of "physical abuse" and "physical restraint" in its response to Defendant's motion for partial summary judgment.  *See, e.g.*, ECF No. 19 at 7, 13, 23.  Plaintiff, however, never mentioned the wheelchair incident in its administrative complaint.  *See* Exhibit G, Administrative Complaint, ECF No. 17-2 at 59.  According to the administrative complaint, the facts that gave rise to Plaintiff's Elder Abuse claim were only those surrounding the alleged application of a second Exelon patch on Flores.  *Id.*  Thus, insofar as Plaintiff now alleges an Elder Abuse claim arising out of the wheelchair incident, which is distinct from the overmedication incident, that injury should have been raised in the administrative complaint.  *See S.H. v. U.S.*, 32 F. Supp. 3d 1111, 1121 (noting that the FTCA's administrative claim form requires the claimant to "state the nature and extent of *each injury* . . . which forms the basis of the claim.") (emphasis added); *see also* Exhibit G, Administrative Complaint,

ECF No. 17-2 at 59 (directing the claimant to state the "nature and extent of each injury or cause of death, which forms the basis of the claim."). That the wheelchair incident came out only during discovery lends further support to the Government's argument that it was not given the minimal notice required to investigate the claim. Accordingly, Plaintiff has failed to exhaust its administrative remedy as to any claim arising out of the wheelchair incident. Thus, because Plaintiff grounds her "physical abuse" theory of liability on an injury not raised in the administrative complaint, the claim is jurisdictionally barred by the FTCA for want of exhaustion.

### B. Neglect

Plaintiff's second theory of elder abuse is that SYHC committed "neglect" within the meaning of the Act. The Government contends, however, that there is no genuine dispute that the United States recklessly neglected Flores because the statutory meaning of "neglect" precludes Plaintiff's argument. In *Covenant Care, Inc. v. Superior Court*, the California Supreme Court concluded that the "statutory definition of neglect speaks not of the undertaking of medical services, but of the failure to provide medical care." 86 P.3d 290, 296 (Cal. 2004) (citing *Delaney v. Baker*, 971 P.2d 986, 993 (Cal. 1999)); *see also Winn v. Pioneer Medical Group, Inc.*, 370 P.3d 1011, 1019 (Cal. 2016) (positively acknowledging *Covenant Care* and *Delaney* as defining "neglect" as the failure to attend to the basic needs of elders under a defendant's care). The court arrived at this conclusion after explaining that neglect, within the meaning of § 15610.57, "covers an area of misconduct distinct from 'professional negligence'" and, therefore, does not refer to "substandard performance of medical services," but to the "failure of those responsible for attending to the basic needs and comforts of elderly or dependent adults, regardless of

/ / / /

/ / / /

/ / / /

/ / / /

*/ / / /*

their professional standing, to carry out their custodial obligations."[3]  *See Covenant Care*, 86 P.3d at 296.  Thus, the Government argues, applying this precedent to the facts here, Plaintiff's claim is insufficient as a matter of law because SYHC did not abandon Flores or deny her medical care.  ECF No. 17-1 at 20.  "On the contrary," the United States contends, "the staff actively undertook to provide treatment."  *Id.*

Plaintiff does not address this argument in its brief.  In fact, Plaintiff does not even cite to any authority on the meaning of neglect under the Elder Abuse Act.  Instead, Plaintiff argues, citing *Intrieri v. Superior Court*, 12 Cal. Rptr. 3d 97 (Cal. Ct. App. 2004), that the Court can infer a genuine dispute of reckless neglect from the "chain of events" that occurred on January 7, 2014.  ECF No. 19 at 24.  More specifically, Plaintiff asks the Court to infer reckless neglect from the fact that: 1) SYHC was understaffed on January 6 and 7, 2014, creating an unsafe environment; 2) Roman should have visualized the patches before removing or placing them instead of performing a "sweep" under Flores' shirt; 3) Roman did not recall when the patch was supposedly removed; 4) Roman delivered Flores' medication late; 5) SYHC staff failed to immediately recognize the signs of an adverse reaction to Flores' medication; and 6) Plaintiff was "restrained with the kind of restraint that she could not free herself from on her own" in violation of SYHC's Participants' Rights."  *Id.* at 23-24.

Even viewing these facts in the light most favorable to Plaintiff, there is not enough evidence to support Plaintiff's contention that there is a genuine issue of reckless neglect.  None of the aforementioned facts, even when viewed as a whole, give rise to a genuine issue for trial because they do not demonstrate that SYHC failed to provide Flores with medical care, that it withheld services from her, or that it denied her basic

---

[3] Accordingly, many California appellate courts now require plaintiffs to demonstrate that the defendant "denied or withheld goods or services necessary to meet the elder['s] . . . basic needs, either with knowledge . . . or with conscious disregard of the high probability of such injury" in order to state a claim for reckless abuse under the Act.  *See, e.g.*, *Carter v. Prime Healthcare Paradise Valley LLC*, 129 Cal. Rptr. 3d 895, 903 (Cal. Ct. App. 2011); *Nickerson v. Scripps Health*, 2013 WL 6841967 (Cal. Ct. App. Dec. 30, 2013); *Good v. Schuh Enter., Inc.*, 2013 WL 5872279 (Cal. Ct. App. Oct. 31, 2013).

3:15-cv-00836-GPC-DHB

needs. Plaintiff has pointed to no case law supporting her argument that a gross deviation from a standard of care can constitute reckless neglect within the meaning of the Elder Abuse Act. What's more, such a conclusion is entirely inconsistent with the California Supreme Court's decision in *Covenant Care*, which made clear that that the statutory definition of "neglect" speaks of the failure to provide medical care rather than the substandard performance of medical care.

In sum, the California Supreme Court spoke plainly when it concluded in *Covenant Care*, *Delaney*, and most recently in *Winn* that the statutory definition of "neglect" speaks of the failure to provide medical care rather than the substandard performance of medical care. Here, SYHC was engaged in the provision of medical care when it administered Flores her Exelon patch sometime in the morning on January 7, 2014. In so doing, SYHC was undertaking to fulfill its custodial obligation to dispense Flores' medication and to care for her medicinal needs. That Roman allegedly failed to remove a prior dosage or failed to visualize Flores' back prior to administering a new patch, may create a genuine issue of fact as to whether SYHC's conduct fell below the standard of care, but not as to whether SYHC neglected Flores within the meaning of the Elder Abuse Act. To the contrary, the fact that SYHC administered Flores' medication, notified Flores' daughters of an issue with their mother, and then called 911 on Flores' behalf reinforces the very fact that SYHC was actively providing for Flores' care and needs. Thus, because there is no genuine dispute as to whether SYHC failed to provide medical care to Flores, Plaintiff has failed to demonstrate that SYHC recklessly neglected Flores within the meaning of the Elder Abuse Act. For this reason, the Court finds, as a matter of law, that Defendant is entitled to summary judgment and that there is no genuine dispute of material fact as to Plaintiff's Elder Abuse claim.[4]

---

[4] Because the Court finds it appropriate to grant summary judgment for Defendant, the Court need not address the Government's argument that Plaintiff's Elder Abuse claim should, nonetheless, be "dismissed" because it is not a "separate cause of action" in light of the fact that sovereign immunity bars Plaintiff from collecting attorney's fees again the government. ECF No. 17-1 at 12-14.

**2.  Intentional Infliction of Emotional Distress**

When alleging the tort of intentional infliction of emotional distress ("IIED"), a claimant must show that: 1) the defendant's conduct was extreme and outrageous; 2)  the defendant acted with the intention of causing, or recklessly disregarding the probability of causing, emotional distress; 3) the plaintiff suffered severe or extreme emotional distress; and 4) that distress was actually and proximately caused by the defendant's extreme and outrageous conduct.  *Davidson v. City of Westminster*, 32 Cal. 3d 197, 209 (Cal. 1982).  Conduct is "extreme and outrageous" when it is "so extreme as to exceed all bounds of that usually tolerated in a civilized community."  *Id.*

The Government argues that there is no evidence in the record to demonstrate that SYHC acted intentionally or that it engaged in any extreme and outrageous conduct. ECF No. 17-1 at 21.  "At best," the Government argues, "Plaintiff may be able to demonstrate that the nurses accidentally placed an extra medicine patch on her [Flores]." *Id.*  "However, there is no evidence whatsoever that this conduct, if it occurred, was in any way intentional, or extreme and outrageous."  *Id.*  In its response, Plaintiff fails to contend with this argument whatsoever.  *See* ECF No. 19 at 25-26.  Instead, Plaintiff merely asserts that the IIED claim is not barred by the FTCA, a position the Government does not assert, and that the Government "contractually agreed it would not commit an intentional tort such as battery."  *Id.*  Since Plaintiff has failed to identify any "specific facts showing that there is a genuine issue for trial," *Celotex*, 477 U.S. at 324, Plaintiff's IIED claim should be dismissed.  It is insufficient for Plaintiff to rely on the pleadings to survive summary judgment.  At this stage, it bore the burden of pointing to genuine issues of fact as to whether SYHC's conduct was recklessly extreme and outrageous. Because Plaintiff has pointed to no case law and no facts to support its contention that SYHC engaged in recklessly extreme and outrageous conduct, the Court finds, as a matter of law, that Defendant is entitled to summary judgment and that there is no genuine dispute of material fact as to Plaintiff's IIED claim.

/ / / /

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CONCLUSION**

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's motion for partial summary judgment as to Plaintiff's claim for relief under California's Elder Abuse and Dependent Adult Civil Protection Act, Cal. Welf. & Inst. Code §§ 15600-15675, and for tortious intentional infliction of emotional distress be **GRANTED.**

**IT IS SO ORDERED.**

Dated:  October 20, 2016

Hon. Gonzalo P. Curiel
United States District Judge

3:15-cv-00836-GPC-DHB